**Lieutenant Jeffrey McEVOY, Plaintiff-Appellee,**

**v.**

**Harold J. SHOEMAKER and Ben K. Blake, Defendants–Appellants,**

**and**

**City of Aurora, Colorado, Defendant.**

No. 88–1317.

United States Court of Appeals, Tenth Circuit.

Aug. 11, 1989.

Rehearing Denied Sept. 6, 1989.

Sander N. Karp (Shelley P. Dodge, with him on the brief) of Karp & Dodge, Denver, Colo., for plaintiff-appellee.

Herbert C. Phillips of Hayes & Phillips, Denver, Colo., for defendants-appellants.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

█ Things have changed since Justice Holmes, then a member of the Supreme Judicial Court of Massachusetts, declared nearly a century ago that a policeman "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 29 N.E. 517, 517 (1892). At least since the Supreme

Court's decision in *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), the precept that government officials cannot alter the employment status of a public employee for exercising first amendment guarantees has been a part of our constitutional jurisprudence. In this case, adherence to this precept is in controversy.

## I.

Plaintiff-appellee Jeffrey McEvoy, a recently retired lieutenant of the City of Aurora Police Department, instituted this civil rights action in the district court pursuant to 42 U.S.C. §§ 1983 & 1985, claiming that the city and its acting and former chiefs of police, defendants-appellants Harold Shoemaker and Ben Blake respectively, improperly denied him a promotion to the rank of captain as a result of a letter he wrote to the city council two years earlier complaining of the "mismanagement of command level personnel" in the department. Shoemaker and Blake moved for summary judgment under Fed.R.Civ.P. 56 asserting qualified immunity on the basis that McEvoy's letter was not protected speech within the meaning of the first amendment, or in the alternative, that the protected status of the letter was not clearly established at the time of the alleged wrongdoing. The district court denied the motion, and the officers appealed.

The denial of a qualified immunity claim is reviewable *de novo* as a final decision under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Valdez v. City and County of Denver*, 878 F.2d 1285, 1286–87 (10th Cir.1989). Our analysis is twofold. *See Brawner v. City of Richardson*, 855 F.2d 187, 191 (5th Cir. 1988); *Noyola v. Texas Dept. of Human Res.*, 846 F.2d 1021, 1023 (5th Cir.1988). First, we must ask whether McEvoy's letter was entitled to first amendment protection. *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If so entitled, we next ask whether McEvoy's first amendment right was "clearly established" such that reasonable officers could have believed

their failure to promote McEvoy was unlawful. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Pleasant v. Lovell*, 876 F.2d 787, 794 (10th Cir.1989). Because we hold that McEvoy's letter was not entitled to first amendment protection, our inquiry there ends. We need not reach the second inquiry. Given our holding, Shoemaker and Blake could not have violated any clearly established constitutional right of McEvoy.

## II.

In *Mount Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the Supreme Court established a three prong test to determine whether a governmental entity's adverse employment decision concerning an employee contravened that employee's first amendment guarantees. The employee must initially show as a matter of law that the speech at issue deserves constitutional protection. This question involves two steps, only the first of which we are concerned with in this instance: (1) whether the speech constitutes a matter of public concern, and (2) whether the employee's interest in making such statements outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. If the court deems the speech worthy of protection, the employee then must prove as a factual matter that the protected speech was a "motivating factor" in the detrimental employment decision. *Mount Healthy*, 429 U.S. 274, 97 S.Ct. 568. Lastly, if the employee establishes his case, the employer must be given an opportunity to persuade the jury that it would have reached the same decision in the absence of the protected activity. *Id.* *See generally Melton v. City of Oklahoma City*, 879 F.2d 706, 735–36 (10th Cir.1989) (Baldock, J., concurring in part and dissenting in part).

Whether McEvoy's letter addressed a matter of public concern depends on its content, context and form as revealed by

the entire record. *Rankin v. McPherson,* 483 U.S. 378, 384–85, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987). To constitute a matter of public concern, speech must relate to a topic of political, social or other concern to the community. *Wulf v. City of Wichita,* 883 F.2d 842, 856 (10th Cir.1989). But speech which may be of general interest to the public is not automatically afforded first amendment protection. *Wilson v. City of Littleton,* 732 F.2d 765, 769 (10th Cir.1984). In *Koch v. City of Hutchinson,* 847 F.2d 1436, 1440 n. 11 (10th Cir.) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988), we recently recognized that in analyzing such issues, "courts have particularly focused on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of government officials in the conduct of their official duties." More recently, in *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988), we emphasized that in analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker, "*i.e.,* whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." (emphasis in original). *See also Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir.1987) (courts must look at the point of the speech: Was the employee's point to bring wrongdoing to light or to raise other issues of public concern because they are of public concern, or was the point to further some purely private interest?).

### III.

■ The record in this case reveals that McEvoy sent a nine page, single spaced, typewritten letter to the city council complaining generally that "internal politicing [sic], favoritism and clique deprivations" governed "transfer[s], training utilization, and personnel relationships" within the police department. Although prefacing his specific grievances with the statements that his "expressions are commonly held viewpoints" and that he was "speaking for others," McEvoy proceeded to complain of the department's failure to select him for training school or promote him from his position as relief watch commander despite his qualifications. McEvoy, however, was "*not alleging misconduct*—only mismanagement and inequities" (emphasis added) and concluded by stating that he would "not display to nor discuss this report with personnel."

Given the entirety of McEvoy's letter, we are convinced that his principal purpose in writing it was not to disclose "malfeasance on the part of government officials in the conduct of their official duties," *Koch,* 847 F.2d at 1445, but instead to air his frustration at having failed to receive a promotion. The Sixth Circuit recently explained our dilemma:

> [I]t is hard to see how any aspect of the operation of any department of any public body could be said not to constitute a legitimate subject of public concern. *Connick* instructs us to examine both the content and the context of the employee's statement, however, and the Court's opinion seems to suggest that if, having done so, we find that the employee's personal interest *qua* employee predominates over any interest he might have as a member of the general public, we are not to intercede.

*Brown v. City of Trenton,* 867 F.2d 318, 321–22 (6th Cir.1989).

In *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court considered the protection to be afforded questions contained in an assistant prosecutor's intra-office survey concerning her co-workers' confidence and trust in various supervisors, the level of office morale, and the need for a grievance committee. The Court viewed these inquiries as nothing more than "mere extensions of Myers' dispute over her transfer to another section of criminal court," *id.* at 148, 103 S.Ct. at 1690, and accordingly denied them protection and upheld the assistant prosecutor's termination:

> To presume that all matters which transpire within a government office are of public concern would mean that virtu-

ally every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149, 103 S.Ct. at 1691. Similarly, we conclude that McEvoy's letter served only to express his disappointment over internal office affairs.

This case is unlike our recent decision in *Wulf.* Wulf, as a member of the Kansas Fraternal Order of Police (FOP), delivered a letter to the state attorney general seeking an investigation of the Wichita police chief's "alleged interference with the right of supervisory police officers to join the FOP; unfair treatment of the FOP private club vis-a-vis other private clubs; misappropriation and misuse of public funds; and [acquiescence in] sexual harassment of one officer by a supervisor." *Id.* at 857. Thereafter, Wulf was relieved of his duties as a Wichita city police officer. We concluded that Wulf's formal letter to the attorney general seeking an investigation of a public official's alleged misconduct strongly supported a finding of public concern. *Id.* at 857-60. Such is not the case here. McEvoy's grievance pertained solely to what he perceived as the unfairness of his superiors' promotional decisions.[1]

Accordingly, the judgment of the district court denying defendants-appellants qualified immunity is REVERSED and this cause is REMANDED with instructions to enter judgment consistent with the views expressed herein.

---

1. Likewise, the Fifth Circuit's decision in *Brawner,* 855 F.2d at 187, that an attorney's letter written on behalf of a police officer constituted a matter of public concern is inapposite. Unlike the facts in that case, McEvoy did not allege serious police misconduct, did not send the letter to the local newspaper and did not comment upon matters previously originating in a public forum. *Id.* at 191.