924

Kenneth D. MOORE, Plaintiff–Appellee,

v.

CITY OF WYNNEWOOD, a municipal corporation; David Sanders, individually and in his official capacity as Chief of Police for the city, Defendants–Appellants.

No. 94–6164.

United States Court of Appeals, Tenth Circuit.

June 13, 1995.

Michael A. Taylor of Taylor, Moore & Plater, Oklahoma City, OK, for plaintiff-appellee.

Andrew W. Lester of Lester, Bryant, Ganz & Beech, Oklahoma City, OK, (Laura L. Holmgren–Ganz with him, on the briefs), for defendants-appellants.

Before EBEL, KELLY, Circuit Judges and BROWN,* District Judge.

EBEL, Circuit Judge.

Plaintiff–Appellee Kenneth Moore ("Moore") claims in this 42 U.S.C. § 1983 action against Defendants–Appellants the City of Wynnewood (the "City") and Wynnewood Chief of Police David Sanders ("Sanders") (collectively "Defendants") that he was demoted from his position as Deputy Chief of

---

* The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

the Wynnewood, Oklahoma Police Department in violation of the First Amendment because of public statements he made at a Wynnewood City Council meeting. Moore also brought pendent state claims for wrongful demotion against Defendants, claiming that the adverse employment decisions taken against him violated Oklahoma tort law. Defendants moved for summary judgment on all claims, asserting that they did not violate Moore's First Amendment or state law rights and that Sanders is protected against suit by qualified immunity. The district court denied Defendants' motion except as to Moore's state tort claim against Sanders. Defendants now appeal.

In exercising our jurisdiction over Sanders' interlocutory appeal of the district court's denial of qualified immunity, we conclude that Moore has failed to show that his First Amendment rights were violated, and, therefore, we reverse the judgment of the district court. We also exercise pendent appellate jurisdiction over the City's interlocutory appeal because our ruling that Moore has failed to establish a First Amendment claim disposes of Moore's claims against the City, both as to Moore's § 1983 cause of action and as to his wrongful demotion claim, to the extent that it is premised on the claimed violation of Moore's First Amendment rights.

## I. FACTS

Defendants do not dispute that they demoted Moore from his position as Deputy Chief of the Wynnewood Police Department, at least in significant part, because of statements he made at a Wynnewood City Council meeting on June 8, 1992. The statements related to events that had taken place about two weeks earlier in Wynnewood when two police officers—Officers Boucher and Bishop—responded to a shooting incident in a predominantly black neighborhood. A potentially riotlike situation developed when the officers arrived, with individuals throwing rocks at the police and another vehicle speeding at the officers when they exited their patrol car, and Boucher and Bishop had to

call for back-up. As a result of the incident, members of the black community requested a meeting with Wynnewood officials to address the events and the police officers' actions. First, the police department conducted an investigation that concluded that proper procedures had been followed. Then, the City Manager, a council member, Police Chief Sanders, and Officers Moore, Boucher, and Bishop held a meeting with members of the community.

Following that first meeting, the incident came up again at a regularly scheduled city council meeting. Moore attended the meeting and addressed the incident, purporting to speak for the police department.[1] Moore was in the middle of his scheduled patrol shift when he went to the meeting, and he had not been authorized to leave his shift duties in order to attend the meeting or to speak on behalf of the department. Moore did not inform his supervisors or dispatcher that he was leaving his patrol for over three hours to attend the meeting, and he was the only officer scheduled for patrol during that shift.

At the meeting Moore stated that the officers had followed department procedures during the relevant incident. However, Moore also stated that the incident was the culmination of prior problems created by a particular officer. Specifically, Moore explained that

> I don't think we've got a police department problem. A police department community problem. I think we have a police officer and community problem.... This thing that happened the other night ... was the culmination of an attitude and a theme that's been going on for quite awhile.

Appellant App. at 108. Moore concluded that "we do have a police officer image problem. Now I don't like to stand here and slam a fellow officer but that's the way it is." *Id.* Moore did not name the particular officer, but later stated that he was referring to Boucher.

---

**1.** Moore stated that "You say you can't speak for the police department, but I can." Appellant App. at 107. When Moore asked that his comments be "off the record," he was told that he could be given no promises. *Id.*

Defendants claim that Moore's statements angered other officers and disrupted the small police department. The Wynnewood Police Department had only six officers at the time, including Moore and Chief Sanders. Moore denies that his comments were disruptive. Nonetheless, Chief Sanders demoted Moore from deputy chief to patrol officer on June 15, 1992. Defendants maintain that Moore was demoted because he left his scheduled patrol, criticized a fellow officer in public without authorization, and significantly disrupted the functioning of the department.[2] The city manager approved Sanders' decision, and Moore then appealed to a city personnel board pursuant to the City's charter. The board upheld the demotion, finding that "there are serious disagreements with Chief Sanders and Assistant Chief Moore, which make it impossible [for them] to work together in this capacity." *Id.* at 166.

Moore maintains that he was demoted because he exercised his First Amendment rights in stating that the department had an image problem with one of its officers, whereas Chief Sanders interpreted those remarks as criticism of his handling of the department. Moore further claims that Defendants harassed him after he spoke at the city council meeting, by issuing him letters of reprimand, suspending him, and setting his shift schedules to conflict with his extracurricular duties as a minister. As a result of this purported harassment, Moore subsequently resigned as a patrol officer, but continued to serve as a Drug Abuse Resistance Education ("D.A.R.E.") officer.

After his resignation, Moore brought this action for deprivation of his First Amendment rights under 42 U.S.C. § 1983 and for the pendent state tort of wrongful demotion.[3] Defendants moved for summary judgment on both causes of action, stating that Moore was not entitled to any relief because his statements were not protected by the First Amendment, and because he was demoted for his job performance and not the exercise of his First Amendment rights. Defendants argued further that they were immune from liability on the state law claim under Oklahoma's Governmental Tort Claims Act. Okla.Stat. tit. 51, § 153. Sanders also raised a qualified immunity defense to Moore's § 1983 claim against him in his individual capacity. The district court ruled that Sanders was not entitled to qualified immunity and denied summary judgment as to Defendants on Moore's First Amendment claim. On the state wrongful demotion cause of action, the court granted Sanders' motion for summary judgment based on state immunity, but found that the City was not entitled to immunity and denied its motion for summary judgment. Defendants now bring this timely appeal. Sanders appeals the district court's denial of his motion for summary judgment on the grounds of qualified immunity. The City appeals the court's denial of its motion for summary judgment on both Moore's § 1983 and wrongful demotion claims.

## II. DISCUSSION

### A. *Jurisdiction*

As a threshold matter, we first address our jurisdiction to consider these appeals. Although our jurisdiction over Sanders' appeal on his defense of qualified immunity is well established, the district court's denial of the City's motion for summary judgment is not a final decision and does not fit into those category of orders that are interlocutorily appealable. Nevertheless, as explained below, we conclude that we can consider this appeal under the doctrine of pendent appellate jurisdiction.

As a general rule, the denial of summary judgment is not a final decision within the meaning of 28 U.S.C. § 1291, and is, therefore, not appealable. However, an individual defendant, like Sanders, who is entitled to raise the defense of qualified immunity, may appeal the denial of summary judgment on the grounds of qualified immu-

---

**2.** There had been previous difficulties between Moore and Chief Sanders, including incidents relating to allegedly discriminatory actions taken by Boucher.

**3.** Moore also brought a state law claim for the intentional infliction of emotional distress. The district court granted summary judgment for Defendants on that claim, and Moore does not appeal that ruling at this time.

nity even though the denial is not a final decision. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985); *Salmon v. Schwarz,* 948 F.2d 1131, 1135–36 (10th Cir.1991).

 In contrast, the City is not entitled to qualified immunity, *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980), and cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision, *Swint v. Chambers County Comm'n,* —— U.S. ——, ——, 115 S.Ct. 1203, 1207–08, 131 L.Ed.2d 60 (1995).[4] Nevertheless, the City asks this Court to exercise pendent appellate jurisdiction over its appeal because it is interrelated with Sanders' permissible appeal. Such an extension of our jurisdiction is generally disfavored; nevertheless, we conclude that it is appropriate in this case because our disposition of Sanders' appeal fully resolves the issues presented in the City's appeal.[5]

We have previously recognized the doctrine of pendent appellate jurisdiction, under which we exercise jurisdiction over an otherwise nonfinal and nonappealable lower court decision that overlaps with an appealable decision. *See Snell v. Tunnell,* 920 F.2d 673, 676 (10th Cir.1990), *cert. denied* 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991); *see also Lankford v. City of Hobart,* 27 F.3d 477, 478 (stating that the court has "discretion to exercise appellate jurisdiction over a nonfinal order when it is sufficiently related to another appeal before the court"). Pendent appellate jurisdiction has been exercised at the discretion of the court. *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir.1994) (declining to exercise pendent appellate jurisdiction over municipality when an employee brought interlocutory appeal raising individual claim of

qualified immunity, because "the factual issues [needed] to resolve the Town's liability are not fully developed ... and are not closely related to the officer's claim of qualified immunity"). In exercising that discretion, we have considered whether (1) an adequate record has been developed for review; (2) the pendent appeal involves questions of fact and law that are closely related to an appealable issue; and (3) exercising pendent jurisdiction would promote judicial economy. *Robinson v. Volkswagenwerk AG,* 940 F.2d 1369, 1374 (10th Cir.1991) (citing *Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1491 (10th Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991)), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992). We have extended jurisdiction to otherwise nonappealable claims in few situations. *See, e.g., Lankford,* 27 F.3d at 478–79 (involving a cross-appeal related to a valid appeal); *Primas v. City of Oklahoma City,* 958 F.2d 1506, 1512 (10th Cir.1992) (same); *Tri–State Generation and Transmission Ass'n v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1352 (10th Cir.1989) (exercising jurisdiction over otherwise nonappealable issues connected to the interlocutory appeal of the denial of an injunction).

The proprietary of exercising pendent appellate jurisdiction under any circumstances—particularly over pendent parties—has been seriously called into question by the Supreme Court's recent decision of *Swint v. Chambers County Comm'n.* In that case, the Court unanimously held that the Eleventh Circuit lacked jurisdiction to rule on a county's interlocutory appeal of a § 1983 claim related to an individual police officer's collateral appeal of the denial of his summary judgment motion based on qualified immuni-

---

4. Similarly, Sanders cannot appeal the denial of summary judgment on Moore's claims against him in his official capacity pursuant to the collateral order doctrine, because the defense of qualified immunity only applies to Sanders in his individual capacity. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *see also Monell v. Department of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) ("[O]fficial-capacity suits generally represent

only another way of pleading an action against an entity of which an officer is an agent....").

5. On the record before us, Moore's state law wrongful demotion claim appears to rest solely on his contention that the demotion violated his First Amendment rights. As such, our rejection of his First Amendment claim fully disposes of his state law claim. To the extent his state law claim rests on other grounds, the district court can address it on remand.

ty. *Swint,* —— U.S. at ——, 115 S.Ct. at 1206. The Court explained that interlocutory appeals should be limited to those expressly provided for by Congress, including (1) under 28 U.S.C. § 1292(b) where a district court certifies an issue for immediate appeal; and (2) pursuant to rules created by the Supreme Court according to its authority from the Rules Enabling Act, codified at 28 U.S.C. §§ 2071–2077. *Id.* —— U.S. at —— ——, 115 S.Ct. at 1209–11. The rule announced in *Swint* is based at least in part on a concern that, even if pragmatic considerations of judicial economy point toward accepting jurisdiction, "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay . . . collateral orders into multi-issue interlocutory appeal tickets." *Id.* —— U.S. at ——, 115 S.Ct. at 1211.

However, despite its suggestion that appellate jurisdiction should never be exercised over nonfinal appeals that do not fall under the collateral order doctrine—unless they are certified or specially permitted by judicial rulemaking—*Swint* does not completely foreclose the use of pendent appellate jurisdiction. *Id.* —— U.S. at ——, 115 S.Ct. at 1212 ("We need not definitively or preemptively settle here whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable."). Specifically, the Court suggested that pendent appellate jurisdiction might still be appropriate where the otherwise nonappealable decision is "inextricably intertwined" with the appealable decision, or where review of the nonappealable decision is "necessary to ensure meaningful review" of the appealable one. *Id.*

In the instant case, we conclude that the City's appeal is "inextricably intertwined" with Sanders' appeal and, thus, falls into one of the narrow exceptions left open by *Swint.* As we read *Swint,* a pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent

claim as well. Here, we conclude that the two appeals are coterminous because Moore's federal and state law claims against the City—to the extent the state law claim references the alleged constitutional violation—are both premised on his claim that Defendants violated his First Amendment rights *and* because we hold that no such First Amendment violation occurred. As such, the issues presented in the City's appeal are no broader than those in Sanders' permissible collateral appeal, and our disposition of Sanders' appeal fully disposes of his claims against the City.

■ This narrow avenue for the continued use of pendent appellate jurisdiction left open by *Swint* would not apply to the instant case if our ruling on the merits of the collateral qualified immunity appeal did not resolve all of the remaining issues presented by the pendent appeal. As the *Swint* Court itself pointed out, a municipality's appeal of a § 1983 claim is not necessarily inextricably intertwined with an appeal of the denial of qualified immunity, and need not be resolved to ensure full review of the qualified immunity appeal. *Swint,* —— U.S. at ——, 115 S.Ct. at 1212; *see also Walter,* 33 F.3d at 1242 (holding that the issue of municipal liability in that § 1983 action did not present the same questions as an individual defendant's appeal of qualified immunity and could not support pendent appellate jurisdiction). For example, were we to hold that Moore's First Amendment rights were violated, the City's liability might turn on whether Sanders, or the city manager who ratified Sanders' decision to demote Moore, were "final policymakers" for § 1983 purposes. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123–27, 108 S.Ct. 915, 924–26, 99 L.Ed.2d 107 (1988). Similarly, the City's appeal might present different issues than Sanders' appeal if we concluded that Defendants violated Moore's First Amendment rights, but Sanders was protected by qualified immunity because those rights were not clearly established. *See infra.* However, in contrast to these hypothetical scenarios, our holding that Defendants did not violate Moore's First Amendment rights settles Moore's federal claim against the City, as well as his state claim, insofar as it is based on Moore's First

Amendment claim. Thus, extending jurisdiction to the City's appeal does not allow the City to parlay Sanders' permissible collateral appeal of the denial of qualified immunity into its own appeal in contravention of *Swint.*

Having established our jurisdiction, we now proceed to the merits of Moore's First Amendment claim and Sanders' qualified immunity defense.

B. *§ 1983 Qualified Immunity, and the First Amendment Rights of Public Employees*

 This Court reviews the district court's denial of summary judgment on Sanders' qualified immunity defense *de novo. Langley v. Adams County, Colo.,* 987 F.2d 1473, 1476 (10th Cir.1993). Qualified immunity shields Sanders from liability and the burden of having to go to trial unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Following the approach specified by *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), we must first assess whether Moore "has asserted a violation of a constitutional right at all," and then evaluate whether any legitimately asserted rights implicated by Moore's demotion were clearly established. If a plaintiff fails to state a valid claim, we need not even reach the issue of the qualified immunity defense. *Primas,* 958 F.2d at 1511; *Hill v. Department of Air Force,* 884 F.2d 1318, 1320 (10th Cir.1989) (per curiam), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Moreover, if Moore fails to state a valid First Amendment claim against Sanders, there would also be no basis for holding the City liable under § 1983.

The First Amendment rights of public employees like Moore are judged according to the framework established by the Supreme Court in *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), and its progeny. Applying that framework and viewing the factual record and all reasonable inferences therefrom in the light most favorable to Moore, we conclude that he has failed to establish a First Amendment violation.

 Defining the free speech rights of public employees involves a balancing between the needs of government as an employer to maintain an efficient workplace and the typical concerns that arise from any attempts by the government as sovereign to limit free expression. As the Supreme Court stated in *Pickering,*

> The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734. The Supreme Court has established a two-part inquiry to evaluate the free speech claims of public employees and to strike an appropriate balance between these competing concerns. First, a plaintiff must establish that the speech for which the employee alleges he or she was retaliated against is "protected speech." To establish that the speech is protected, the employee must show that: (1) the speech involves a matter of public concern and not merely a personal issue internal to the workplace, *Connick v. Myers,* 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); and (2) the employee's interest in the particular expression outweighs the government's interest in regulating such expression to maintain an efficient and effective workplace, *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734). Second, if the speech is protected, the plaintiff must also show that the speech was a substantial or motivating factor in the challenged governmental action(s), and the employer must be given an opportunity to show that it would have taken the same actions in the absence of the protected expression. *Mt. Healthy v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). We address each element of this two-pronged inquiry in turn.

A statement is characterized as a matter of public concern and not merely a personal employment grievance if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–90. When an employee speaks "as an employee upon matters only of personal interest" the speech is not protected. *Id.* at 147, 103 S.Ct. at 1690. To judge whether particular speech relates merely to internal workplace issues, courts must conduct a case by case inquiry, looking to the "content, form, and context" of the speech, *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690, which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance, *McEvoy v. Shoemaker,* 882 F.2d 463, 466 (10th Cir.1989). An employee's speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Wilson v. City of Littleton, Colo.,* 732 F.2d 765, 768 (10th Cir. 1984); *see also Koch v. City of Hutchinson,* 847 F.2d 1436, 1445–47 (10th Cir.) (en banc) (reaffirming *Wilson* ), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). That is, we look beyond the general topic of the speech to evaluate more specifically what was said on the topic.

In the present action, the relevant speech consists of Moore's statements at the city council meeting regarding the role of an "image problem" of an officer in causing or exacerbating the riotlike incident that occurred in Wynnewood. Looking at the circumstances surrounding Moore's statements, we concur with the district court's conclusion that they clearly involved matters of public concern. Moore's statements were uttered in a public forum and related to an issue of pressing concern to the community that had been raised at the meeting by citizens other than Moore. *See Connick,* 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8 (describing an employee's protests about racial discrimination as "a matter inherently of public concern"). Moreover, Moore's opinion about the police department and its relations with the community provided the public with a useful perspective of the incident from a senior member of the department. As such, Moore's speech did not merely relate to a matter of general public interest, but helped inform the public on an important subject that was of heightened concern in the community.

Defendants characterize Moore's statements as an internal grievance related to a personal dispute with Officer Boucher and/or Chief Sanders. However, the mere fact that Moore's statements related to a general grievance he had with Boucher or Chief Sanders does not transform the statements into a matter solely of internal significance. The statements were made in relation to and in the context of an important community discussion and not as part of any particular employment practice or decision involving Moore. Thus, this case is distinguishable from the case of *McEvoy v. Shoemaker,* for example, where the court ruled that a letter written by a police officer to the city council complaining about mismanagement in the police department after he had been denied a promotion was not of public concern. 882 F.2d at 465. The *McEvoy* court held that while the operation of the department might be of general concern, McEvoy's principal purpose was to air his personal dispute about not receiving a promotion. *Id.* at 467. Rather, this case resembles *Wulf v. City of Wichita,* where the court ruled that a letter written by a police officer to the state attorney general complaining about a police chief's interference with the activities of a police union were of public concern, even though the letter also related to personal problems and tension between the officer and police chief. 883 F.2d 842, 857–59 (10th Cir.1989); *see also Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir.1988) (analyzing an employee's purpose in speaking as one factor in the public concern determination and highlighting that the speaker was not motivated "solely" by personal grievances or interest). Therefore, we conclude that Moore's statements were of public concern.

Defendants' claim that Moore's accusations were false does not alter our conclusion that his speech was of public concern.

We may assume that deliberately or recklessly false statements by public employees are either unprotected by the First Amendment or, at least, that such intentional falsity would weigh heavily against protection. *See Pickering,* 391 U.S. at 574, 88 S.Ct. at 1737–38 (suggesting that a public employee *might* lose the protection of the First Amendment for knowingly or recklessly making false statements); *Wulf,* 883 F.2d at 858 & n. 24 (suggesting that malicious or reckless false statements would receive less protection). However, here Defendants have failed to show either that Moore's statements were false or that Moore made them knowing that they were false or with reckless disregard for their veracity. Defendants claim that since the official investigation of the incident concluded that Boucher and the other officer followed appropriate procedures, Moore could not have been disclosing any wrongdoing, and thus he was merely making false accusations against Boucher. However, Moore's declaration that a particular officer had an image problem in the community is a matter of opinion and, in any event, is not negated by the fact that Boucher may have followed proper procedures in the incident. Even if the statement could be shown to be false, Defendants have offered no evidence that Moore knew it was false or acted recklessly with regard to its truth or falsity. *See Wulf,* 883 F.2d at 858–59. Moore was careful to state that the police followed proper procedures during the incident in question, and only explained that the incident would not have occurred in the first place if it were not for a particular officer's negative image in the community.

 Although we conclude that Moore has satisfied the threshold requirement that his statements were of public concern, he must still show that his interest in the speech outweighed the government's countervailing interest in regulating the speech to maintain an effective working environment. Moore's interest in commenting on racial discrimination and the race relations of the police with the community is "self-evident." *Patrick v. Miller,* 953 F.2d 1240, 1247 (10th Cir.1992). As we stated above, Moore's perspective as a senior officer in the police department made his perspective sufficiently informative to the public to qualify his speech as on a matter of public concern. *See Waters v. Churchill,* —— U.S. ——, ——, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994) ("Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions."). Nevertheless, Moore's speech is less important and less valuable to the public than is the speech often at issue in public employee speech cases. In particular, although providing an insider's perspective on an important issue, Moore did not reveal any new information to the public about the operation of the police department. For example, Moore did not disclose any "wrongdoing or inefficiency or other malfeasance on the part of the government[ ]," which we have previously recognized as particularly important matters of public concern. *Koch,* 847 F.2d at 1445; *see also Hughes v. Whitmer,* 714 F.2d 1407, 1423 (8th Cir.1983) ("[A]n employee's first amendment interest is entitled to more weight where he is acting as a whistleblower exposing government corruption."), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Whistleblowing, of course, is not the only form of public employee speech that is protected, but "the State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Connick,* 461 U.S. at 150, 103 S.Ct. at 1692.

 Balanced against the importance of Moore's speech are powerful governmental concerns that support the City's ability to take disciplinary measures in response to Moore's speech. As a starting matter, the government has a strong interest in controlling the speech of its employees when they purport to speak for the city or one of its departments. An employee's speech is not exempted from First Amendment protection just because it occurred on the job or as part of an employee's official functions, *Koch,* 847 F.2d at 1441–42; nevertheless, we acknowledge a city's special interest in controlling its own speech by taking action against employees who purport to speak for the government. In *Koch* we stated that

[t]he fact that the speech at issue occurred during or as a part of an Employee's official duties is but one consideration in the *Connick–Pickering* inquiry. Nonetheless, it is a *significant* factor....

*Id.* at 1442 (emphasis in original).

In the present action, there are some indications that Moore was speaking for the police department. For example, he stated at the city council meeting that "You say you can't speak for the police department, but I can." Appellant App. at 107. Moreover, Moore was in uniform and on duty at the time of the meeting, and he might have appeared to citizens to be speaking in an official capacity, particularly given that Moore was the deputy chief of police and had other public relations duties as part of his job. However, Moore phrased his statements in terms of his personal opinion by stating "I think" and not "the Department thinks," and he attempted to have his comments be "off the record." *Id.* Nevertheless, we treat the close nexus between Moore's comments and his official duties and responsibilities as a factor (although not a conclusive one) weighing on the side of the City's ability to regulate such speech.

■ In addition, Defendants articulate other strong reasons for demoting Moore as a result of the incident. In particular, Moore left his scheduled patrol shift without authorization to attend the city council meeting and make his statements, despite being the only officer on duty to provide the town with protection at the time. As the Supreme Court stated in *Connick v. Myers,* the "manner, time, and place" in which expression takes place is relevant to the *Pickering* balancing calculus. 461 U.S. at 152–53, 103 S.Ct. at 1693. Looking to those factors in the instant case, we consider the fact that Moore essentially went "AWOL" and left Wynnewood without protection for the three hours he attended the city council meeting as strong support for the City's actions.

■ Furthermore, the government needs to maintain "discipline by superiors [and] harmony among co-workers," especially where "close working relationships [exist] for which personal loyalty and confidence are

necessary." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899. That need is particularly acute in the context of law enforcement, where there is a "heightened interest ... in maintaining discipline and harmony among employees." *Wulf,* 883 F.2d at 861; *see also Kelley v. Johnson,* 425 U.S. 238, 246–47, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (1976) (recognizing the need to accord police departments wide latitude in decisions that impact "discipline, esprit de corps, and uniformity"). In the present case, Moore's statements threatened both the department's morale and chain of command. Working relations could not get much closer than in the six-person Wynnewood Police Department, and Moore's position as the second in command might have caused his statements to reverberate with special force. "The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails." *Rankin,* 483 U.S. at 390, 107 S.Ct. at 2900.

■ Moore maintains that Defendants have not shown that Moore's statements actually caused any disruption in the Wynnewood Police Department. The government cannot rely on purely speculative allegations that certain statements caused or will cause disruption to justify the regulation of employee speech. *Wulf,* 883 F.2d at 862. Furthermore, the government's concerns about the impact of speech must be reasonable and formed in good faith. *Waters,* —— U.S. at ——, 114 S.Ct. at 1889. However, neither does the government, or a police department in particular, have to wait for speech actually to disrupt core operations before taking action. "[W]e have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large." *Waters,* —— U.S. at ——, 114 S.Ct. at 1887. In the present case, Defendants have articulated specific concerns about the impact of Moore's statements criticizing Officer Boucher at the Wynnewood City Council meeting. First, the small size of the department increased the likelihood and severity of disruption. Second, Moore's leadership position also increased the chance that his state-

ments would impact the department and would reasonably threaten his close working relations both with the ordinary patrol officers and with Chief Sanders. *See Wulf,* 883 F.2d at 861 (noting that the government's justifications for regulating speech were weaker when an officer's critical statements did not relate to someone with whom the officer had to work closely); *Joyner v. Lancaster,* 815 F.2d 20, 24 (4th Cir.) (rejecting the First Amendment claims of a discharged captain in the sheriff's department in part because he was "a highly placed official in a para-military unit," and because "[h]e had an important role in the implementation of the sheriff's policies, and he was an essential link between the sheriff and the deputies whom he supervised"), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). Moreover, Defendants need not justify their predictions of department disruption with a formal evidentiary showing. Governmental employers should be allowed to "rely on hearsay, on past similar conduct, on . . . personal knowledge of people's credibility, and on other factors that the judicial process ignores." *Waters,* — U.S. at —, 114 S.Ct. at 1888. Thus, although government employers do not have a blanket license to retaliate against employees based on unfounded fears or speculation about the harmful effects of employee speech, Defendants have identified a reasonable basis for their actions.

We conclude that the *Pickering* balance clearly tips in favor of Defendants. Even viewing the factual record in the light most favorable to Moore, we conclude that Moore has failed to show that his interest in voicing his opinion about Officer Boucher and the police department's race relations problem as he did, while on duty and in uniform, out-

weighed Defendants' interest in controlling who purports to speak on the City's behalf and in safeguarding the operation of the department. Accordingly, Moore's speech was not entitled to First Amendment protection, and Moore's § 1983 claims against both Sanders and the City must fail.[6] Given our conclusion that Moore's speech was not protected, we need not reach the issue of whether Moore's speech was a substantial or motivating factor in his demotion.

## C. *Moore's Wrongful Demotion Claim*

■ Our conclusion that Moore has not shown a constitutional violation also defeats his wrongful demotion tort claim against the City insofar as it relies on his constitutional claim. Moore's state action for wrongful demotion is based on *Burk v. K–Mart Corp.,* 770 P.2d 24 (Okla.1989). *Burk* provides that an employer can be liable for discharging even an at-will employee if "the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory, or decisional law." *Id.* at 28. Moore's *Burk* claim appears to be based solely on his contention that he was demoted in contravention of his constitutional rights. However, as explained above, we conclude that Defendants did not abridge Moore's First Amendment rights. Accordingly, Moore has failed to establish a basis upon which to claim that he was wrongfully demoted.[7]

## III. CONCLUSION

In reviewing Sanders' interlocutory appeal of the district court's denial of his motion for summary judgment on the ground of qualified immunity, we conclude that Moore has

---

6. Even if Moore had shown that the *Pickering* balance tipped in his favor, he would be hard pressed to establish that his First Amendment rights were clearly established, and Sanders, therefore, would be entitled to the defense of qualified immunity. As we have stated:

In the First Amendment context, the *Harlow* inquiry must focus on whether, at the time the actions adverse to the employee-speaker were taken, the defendants would have been reasonably on notice that the speech at issue addressed a matter of public concern *and* that their interest in the effective functioning of their governmental enterprise would be insuffi-

cient for purposes of *Pickering* balancing to outweigh the employee's free speech interest. *Considine v. Board of County Comm'rs,* 910 F.2d 695, 702 (10th Cir.1990) (emphasis in original).

7. The City also argues that Oklahoma does not recognize a tort for wrongful *demotion* and that *Burk* actions are limited to wrongful *discharges.* Because we reject Moore's claim on other grounds, we do not decide whether Oklahoma would extend *Burk* actions to wrongful demotions. Similarly, we do not reach the issue of whether the City is entitled to immunity under Oklahoma's Governmental Tort Claims Act.

failed to show that Defendants violated his First Amendment rights. As such, we need not reach Sanders' qualified immunity defense. Furthermore, our judgment fully forecloses both Moore's federal and state claims against the City and allows us to exercise jurisdiction over the City's otherwise premature appeal. For the reasons stated above, the decision of the district court is REVERSED as to both defendants, and the matter is REMANDED to the district court.