**John H. BUNKER, Plaintiff,**

v.

**CITY OF OLATHE, KANSAS, et al., Defendants.**

**No. CIV.A. 99–2217–GTV.**

United States District Court, D. Kansas.

May 31, 2000.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for John K Bunker, plaintiff.

Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Olathe, Kansas, City of, Susan Sherman, Former Acting City Manager for the City of Olathe, Kansas, Philip J Major, Former Police Chief for the City of Olathe Police Department, Howard Kannady, Acting Police Chief for the City of Olathe Police Department, defendants.

## MEMORANDUM AND ORDER

VANBEBBER, District Judge.

Plaintiff John H. Bunker filed this civil action against the following defendants: City of Olathe, as public employer; Susan Sherman, in her individual capacity and as former Acting City Manager of the City of Olathe; Philip Major, in his individual capacity and as former Chief of Police of the City of Olathe; and Howard Kannady, in his individual capacity and as former Acting Chief of Police of the City of Olathe. Plaintiff alleged, among other things, that Defendants retaliated against him in violation of 42 U.S.C. § 1983 for exercising his First Amendment right to free speech. Defendants Sherman, Major, and Kannady filed a motion for summary judgment (Doc. 23) with respect to Plaintiff's § 1983 claims against them in their individual capacities, contending that they are immune from liability under the doctrine of qualified immunity. For the reasons set forth below, that motion is denied.

### I. Summary Judgment Standard

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue of fact exists if the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "material" if it is essential to the proper disposition of the claim. *See id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *See id.*

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See id.* at 670–71 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party. *See id.*

## II. Factual Background

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff's case. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff is a former Captain with the City of Olathe Police Department. He was hired by the City of Olathe in 1973; attained Captain status in 1982; and retired from service on October 1, 1998. For the years 1995 and 1996, Plaintiff received complimentary annual evaluations. Effective January 13, 1997, Plaintiff was assigned to command the Investigations Division of the Police Department. In this position, Plaintiff served, among other things, as the primary contact person for the Midstates Organized Crime Information Center ("MOCIC"). MOCIC is one of six regional projects that form the Regional Information Sharing System, which is supported by a federal grant. The overall objective of the six regional projects is to enhance the ability of local, state, and federal law enforcement agencies to identify, target, and remove criminal conspiracies and activities that cross jurisdictional boundaries. To help accomplish this objective, MOCIC provides "a computerized criminal intelligence database and intelligence inquiry service, analysis of investigated data, loan of specialized surveillance equipment, confidential expenditures, criminal information digest, technical assistance, training, and access to a telecommunication system."

In late 1997, an employee of MOCIC named Bill Goodrich contacted Plaintiff to inquire about the MOCIC telecommunications system ("telephone patch call system"). Mr. Goodrich advised Plaintiff "that his reason for visiting the Olathe Police Department was to relay his superior's concern that the Department had utilized the telephone patch call system 35–40 times in 1997, but had not submitted any criminal intelligence into the intelligence database during this same time period." This was apparently somewhat unusual because a person using the telephone patch call system usually provided his or her name, the local case number or type of criminal activity being discussed, and the telephone number of the agency or law enforcement official being contacted. Some investigative work revealed that approximately twenty-nine of the suspicious phone calls were made by the Chief of Police, Defendant Major, with a portion of those phone calls being made to a number listed to Barbara R. Major, Defendant Major's ex-wife. Plaintiff concluded that Defendant Major was likely using the MOCIC telephone system for unauthorized personal use.

On December 3, 1997, Plaintiff met with the Acting City Manager of Olathe, Defendant Sherman, to discuss the MOCIC

situation. At that time, Plaintiff provided Defendant Sherman with copies of the MOCIC manual and telephone records.

Shortly thereafter, an article appeared in an Olathe newspaper regarding Plaintiff's report to Defendant Sherman, and Defendant Major's alleged misuse of the MOCIC telephone line. Plaintiff claims that he did not speak to the Olathe newspaper or any other media organization concerning either his conversation with Defendant Sherman or his suspicions of misuse of the MOCIC telephone line.

Plaintiff was scheduled to receive his annual evaluation for 1997 on December 20, 1997, with a salary change to be effective December 15, 1997. Despite his requests, Plaintiff did not receive the annual evaluation until September 6, 1998.

On February 20, 1998, Defendant Major advised Defendant Kannady, who was then the Commander of the Internal Affairs Division, that various officers had expressed concerns that Plaintiff was disrupting the working conditions by engaging in conversation concerning "open and disrespectful criticism of other officers and various issues within the police department in their treatment of employees." Defendant Kannady looked into this matter by interviewing six officers.

On February 26, 1998, Plaintiff initiated a visit with Johnson County District Attorney Paul Morrison to discuss the MOCIC situation.

On March 2, 1998, after reviewing transcripts [1] of the six interviews conducted by Defendant Kannady, Defendant Major ordered the initiation of a formal Internal Affairs Investigation against Plaintiff.

On March 3, 1998, Plaintiff received notification that Defendant Major authorized the Internal Affairs Investigation against him. On that same day, Plaintiff was placed on administrative leave pending the outcome of the investigation. Throughout the investigation, Defendant Kannady interviewed numerous officers of the Olathe Police Department.

Defendant Sherman, as Acting City Manager, reviewed transcripts of the interviews and determined that Plaintiff had violated multiple sections of the Olathe Police Department Rules and Regulations. Plaintiff received a letter from Defendant Sherman on June 29, 1998, that informed him of her determination and imposed discipline upon him of one year probation. Defendant Kannady, who was then Acting Chief of Police,[2] reassigned Plaintiff from Commander of the Investigations Division to a position in the Administration Division entitled Special Projects Officer.

Plaintiff contends that his working conditions eventually became so intolerable that he was forced to retire early.

---

1. Plaintiff filed a motion to strike the exhibits attached to Defendants' memorandum in support of summary judgment (Doc. 46). Specifically, Plaintiff moved to strike the transcripts of unsworn interviews taken as part of the informal and formal Internal Affairs investigations against him. Plaintiff correctly points out that, for purposes of summary judgment, each document must be authenticated through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit. *See* Fed.R.Civ.P. 56(c) and (e); D. Kan. Rule 56.1; *Toney v. Cuomo,* Nos. 98–2478–JWL and 98–2479–JWL, 2000 WL 382004, at *8 (D.Kan. March 27, 2000); *IBP, Inc. v. Mercantile Bank of Topeka,* 6 F.Supp.2d 1258, 1263 (D.Kan. 1998) (holding that on summary judgment, business records that normally would be ad-

missible at trial under the hearsay exception may be considered only if authenticated by a person through whom the exhibits could be admitted into evidence at trial). In their reply brief to their motion for summary judgment, Defendants attached an affidavit from the records custodian for the Internal Affairs Unit of the Olathe Police Department authenticating the challenged documents. For this reason, the court denies Plaintiff's motion to strike the exhibits.

2. Sometime during the Internal Affairs investigation against Plaintiff, Defendant Major stepped down as Chief of Police and Defendant Kannady became the Acting Chief of Police of the City of Olathe.

### III. Discussion

Defendants Sherman, Major, and Kannady contend that, with respect to Plaintiff's § 1983 claims, they are immune from liability in their individual capacities because of the doctrine of qualified immunity. The court disagrees.

 Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butler v. City of Prairie Village*, 172 F.3d 736, 745 (10th Cir.1999). To determine whether a government official is entitled to qualified immunity, the court must first assess whether the plaintiff has " 'asserted a violation of a constitutional right at all,' " *see Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir.1995) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)), and then evaluate whether those properly asserted rights were clearly established such that a reasonable person in the official's position would have known that his or her conduct violated that right, *see id.; Merkel v. Leavenworth County Emergency Med. Servs.*, No. 98–2335–JWL, 2000 WL 127266, at *10 (D.Kan. Jan.4, 2000).

 Because this case involves alleged retaliation against Plaintiff for expression of speech, the court's analysis involves the following four steps: First, the court must determine whether Plaintiff's speech touched upon matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If so, the court must determine whether Plaintiff's interest in the speech outweighs Defendants' interest, as a public employer, in regulating the speech to maintain an effective and efficient workplace. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). If the court determines that Plaintiff's interest in the speech outweighs Defendants' interest, then Plaintiff bears the burden to show that the speech was a substantial or motivating factor in the challenged action taken against him. *See Mt. Healthy v. Doyle*, 429 U.S. 274, 286–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Dill v. City of Edmond*, 155 F.3d 1193, 1201–02 (10th Cir.1998). Finally, if Plaintiff shows the speech was a substantial or motivating factor, then Defendants may avoid liability by demonstrating that they would have taken the same action against Plaintiff regardless of his expression of the protected speech. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Dill*, 155 F.3d at 1202. The first two steps are legal questions for the court to decide to determine whether the speech is constitutionally protected; the second two steps concern causation and are questions of fact. *Dill*, 155 F.3d at 1202 (citing *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996)).

 Defendants make clear in their briefing to this court that only the first two steps are addressed in their motion for summary judgment. Accordingly, the court first looks to whether Plaintiff's speech related to matters of public concern. Plaintiff's complaint states that Defendants subjected him to adverse employment action due to his exercise of free speech "in expressing his concern to [Defendant] Sherman that [Defendant] Major might be misusing a federally funded MOCIC telephone line for his own personal use." Speech relates to a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ... clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988). The court concludes that Plaintiff's statements to Defendant

Sherman, as Acting City Manager, related to matters of public concern.

 Defendants correctly point out that speech concerning matters that solely are of personal interest to government employees is not protected by the First Amendment, *see Connick,* 461 U.S. at 147, 103 S.Ct. 1684, and that the court must evaluate whether Plaintiff's purpose "was to bring an issue to the public's attention or to air a personal grievance" to determine whether it concerns public matters or merely internal workplace matters. *Moore,* 57 F.3d at 932 (citing *McEvoy v. Shoemaker,* 882 F.2d 463, 466 (10th Cir. 1989)). Defendants argue that there is substantial evidence that Plaintiff reported the alleged misconduct of Defendant Major as part of a personal vendetta against Defendant Major and, therefore, the speech should not be protected. The court determines, however, that even if Plaintiff's statements were motivated by a personal vendetta against Defendant Major, the statements do not pertain to matters solely of internal significance; therefore, Plaintiff's motivation for the speech does not negate the fact that the speech related to matters of public concern. *See Moore,* 57 F.3d at 932 (holding that plaintiff's motivation is not the sole relevant factor, especially where the statements made relate to important community issues as opposed to particular employment practices involving plaintiff).

 Having concluded that Plaintiff's speech related to matters of public concern, the court now must determine whether Plaintiff's interest in the speech outweighs Defendants' interest in regulating the speech to maintain an effective and efficient working environment. *See Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. "Pertinent considerations include 'the manner, time, and place of the employee's expression ... the context in which the dispute arose ... [and] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working rela-

tionships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Patrick v. Miller,* 953 F.2d 1240, 1248 (10th Cir.1992) (quoting *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). The court concludes that Plaintiff's interest in reporting Defendant Major's alleged misconduct to Defendant Sherman outweighs Defendants' interest in regulating the speech.

As commander of the Investigations Division, Plaintiff was accorded the responsibility of serving as the primary contact person for the MOCIC. In fact, Defendants do not challenge the propriety of Plaintiff reporting the alleged misconduct to Defendant Sherman; instead, Defendants complain about other speech apparently engaged in by Plaintiff while on duty concerning the alleged misconduct of Defendant Major, as well as other work and non-work related topics. Defendants complain that this speech "occurred during on-duty time often to the disruption of the working environment of his co-workers"; inappropriately "occurred in the presence of subordinate officers"; and "made several officers with the Department feel uncomfortable."

 While Plaintiff may have engaged in extensive conversations during work concerning Defendant Major or other matters, that is not the speech that forms the basis of Plaintiff's § 1983 claims. Plaintiff's § 1983 claims are based on his exercise of speech "in expressing his concern to [Defendant] Sherman that [Defendant] Major might be misusing a federally funded MOCIC telephone line for his own personal use." Thus, it appears to the court that any balancing of Defendants' interests in regulating Plaintiff's speech must focus on possible consequences to Defendants as a result of Plaintiff's reporting the alleged impropriety of Defendant Major to Defen-

dant Sherman.[3] Defendants offer no negative or disruptive consequences, actual or perceived, that resulted from Plaintiff's report to Defendant Sherman.

 It could be argued that the newspaper article that was subsequently published concerning Defendant Major's possible misuse of the MOCIC telephone line, and the resulting gossip that occurred among officers within the police department, constitute sufficiently disruptive consequences to tip the balance in favor of Defendants. Any time a whistle is blown on a chief of police, articles are likely to appear in the newspapers and officers are likely to gossip. "It would be anomalous to hold that because the employee's whistle blowing might jeopardize the harmony of the office or tarnish the integrity of the department, the law will not allow him to speak out on his perception of potential improprieties or department corruption." *Conaway*, 853 F.2d at 798 (citing *Porter v. Califano*, 592 F.2d 770, 773 (5th Cir.1979)).

 The court concludes from the record before it that Plaintiff's challenged speech related to matters of public concern, and that Plaintiff's interest in the speech outweighs Defendants' interest in regulating the speech to maintain an effective and efficient working environment. The court also concludes that at the time of their actions, Defendants Major, Sherman, and Kannady reasonably should have been aware that any adverse actions taken against Plaintiff in retaliation for his reporting the alleged misconduct of Defendant Major to Defendant Sherman would violate clearly established First Amendment constitutional rights. Tenth Circuit case law makes it amply clear that employee speech concerning impropriety on the part of a police chief is protected by the First Amendment, particularly where there is little to no evidence of resulting disruption. *See Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989); *see also Bisbee v. Bey*, 39 F.3d 1096 (10th Cir.1994).

Defendants' motion for summary judgment based upon qualified immunity is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants Sherman, Major, and Kannady's motion for summary judgment (Doc. 23) is denied.

IT IS FURTHER BY THE COURT ORDERED that Plaintiff's motion to strike Defendants' exhibits (Doc. 46) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.

---

3. The court notes that speech which disrupts workplace relationships can be unprotected even if it touches upon matters of public concern. *See Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Moreover, evidence of disruptive behavior caused by Plaintiff engaging in other unprotected speech may be relevant to the fourth step in the analysis to determine whether Plaintiff's First Amendment rights have been violated (i.e., it may be relevant to show whether Defendants would have taken the same action against Plaintiff regardless of his expression of the protected speech). That issue is not presently before the court, however, and the court makes no determination as to whether any other speech engaged in by Plaintiff constitutes protected speech, or whether Defendants would have taken the same action against Plaintiff regardless of the challenged speech at issue in this case.