FILED
United States Court of Appeals
Tenth Circuit

January 4, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

---

NICK LYNCH,

      Plaintiff-Appellee,

v.

ADAM BARRETT; SGT. STEPHEN
KENFIELD; MICHAEL MORELOCK;
CITY AND COUNTY OF DENVER,

      Defendants-Appellants,

and

ABBEGAYLE DORN,

      Defendant.

No. 12-1222

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CV-01120-RBJ-MEH)

---

Wendy J. Shea, Assistant City Attorney, Office of City Attorney, Litigation Section
(Stuart Shapiro, Assistant City Attorney, Douglas Jewell, Bruno, Colin, Jewell &
Lowe, P.C., and Reid J. Elkus, Elkus, Sisson & Rosenstein, P.C., with her on the
brief), Denver, Colorado, for Defendants-Appellants.

Robert M. Liechty, Cross Liechty Lance PC, Greenwood Village, Colorado, for
Plaintiff-Appellee.

---

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

Plaintiff Nick Lynch claims Defendants Adam Barrett, Stephen Kenfield, and Michael Morelock, all police officers for Defendant City and County of Denver, violated his constitutional right to court access by refusing to disclose who exercised excessive force against him in the course of an arrest. Plaintiff further claims Defendant City violated his right to court access by adopting a policy and practice that precipitated the "conspiracy of silence" waged against him. As to Plaintiff's first claim, the district court entered an order denying Defendant Officers qualified immunity in the context of their motion for summary judgment. As to Plaintiff's second claim, the district court in the same order denied Defendant City's "standard" motion for summary judgment, *i.e.*, one that simply asserts the lack of any genuine issue of material fact for trial. Defendant Officers appeal. We exercise jurisdiction over their appeal, to the extent permitted by law, under 28 U.S.C. § 1291 pursuant to the collateral order doctrine first announced in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). Our review is de novo. See Morris v. Noe, 672 F.3d 1185, 1189 (10th Cir. 2012). Defendant City too appeals, asking us to exercise pendent party jurisdiction over what is, from the City's perspective, an otherwise unappealable order. See Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 41–43 (1995). After sorting through this kettle of fish, we reverse the district court's decision denying Defendant Officers qualified immunity, dismiss Defendant City's appeal for lack of jurisdiction, and remand for further proceedings.

I.

According to the district court, the problem arose in March 2008 after Plaintiff punched another individual outside a nightclub in downtown Denver. Plaintiff fled the scene, jumped over the fence of a gated parking lot, and hid in some bushes. Up to six officers followed him into the lot. With game over, Plaintiff stood up. One or more officers then threw Plaintiff to the ground and struck him several times in the back of his left thigh with a baton or flashlight. Because Plaintiff was face-down on the ground, he could not identify the officer or officers responsible.

In its written order, the district court first reached two legal conclusions as they bore upon Defendant Officers' claim to qualified immunity:

> This court is satisfied that intentional concealment of evidence by a police officer that interferes with an individual's ability to obtain redress for police misconduct is unconstitutional. This court is also satisfied that it would be clear to a reasonable police officer that intentional concealment of evidence of another officer's misconduct, the so-called conspiracy of silence, is unlawful. Accordingly, if these officers did intentionally conceal evidence of another officer's [use] of excessive force, they are not entitled to qualified immunity.

Lynch v. Barrett, 2012 WL 1890442, at *3 (D. Colo. 2012) (unpublished) (internal citations omitted). The court next recited some of the evidence that supported Plaintiff's version of events and concluded a jury could find Defendant Officers intentionally concealed the identity of the officer or officers who had exercised excessive force against him.

> [Officer Barrett] testified [in his deposition] that as he approached the bushes he "saw [Plaintiff] start to stand up, and then the [arresting]

3

officers rushed the bush, and he was taken down." This testimony raises the factual questions of whether Officer Barrett saw who rushed [Plaintiff], who arrested him, and who either used excessive force or was in a position to know, if anyone, did. . . .

Officer Morelock states in an affidavit that "after I went over the fence, I turned towards the bushes and noticed several other officers already present. Therefore, I ran over to assist them." Officer Barrett testified . . . that Officer Morelock climbed the fence with him . . . . There is at least some evidence that [Officer Morelock] was in a position to observe the arrest or, at least, who participated in it.

Sgt. Kenfield reports in his affidavit that he did not participate in the arrest or witness it. . . . However, Sgt. Kenfield also reports that even though it took him four or five minutes to get over the fence, several officers were already present in the fenced-in area. He was by his own admission, in the near vicinity of the arrest when it happened and saw which officers were present.

Id. at *3–*4 (internal record cites and brackets omitted).

Unlike the facts bearing upon Defendant Officers' involvement in Plaintiff's arrest, the facts surrounding Defendant City's alleged establishment of a policy or practice that caused Defendant Officers' "cover-up" are unimportant for present purposes. Suffice to say the district court concluded Plaintiff raised genuine issues of material fact for trial on his municipal liability claim against Defendant City. The court decided a reasonable jury could find Defendant City maintained a policy or practice that caused Defendant Officers' cover-up and Plaintiff's consequent inability to obtain legal redress on his excessive force claim.

II.

As a preliminary matter, we point out that Plaintiff's "backwards looking"

4

denial-of-access claim is ripe for adjudication in the district court. A backwards looking access claim *may* arise where a plaintiff alleges an underlying claim cannot be tried, or be tried with all the evidence, because official conduct caused the loss or inadequate resolution of that claim. See Jennings v. City of Stillwater, 383 F.3d 1199, 1208–09 (10th Cir. 2004) (distinguishing between "forward looking" and "backwards looking" court access claims). In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court *assumed* a backwards looking denial-of-access claim is actionable where based on a lost opportunity to seek legal redress on an underlying claim. Id. at 412 n.6, 414 n.9. To allege a compensable injury, a plaintiff claiming denial of court access under such circumstances,

> must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Id. at 415.

Plaintiff has already litigated his underlying claim of excessive force against Defendant Officers unsuccessfully, and so his opportunity to recover on that claim has passed. The district court granted Defendant Officers' Rule 50 motion for judgment as a matter of law at the close of Plaintiff's case because Plaintiff's proof was insufficient to establish the Officers were responsible for the force used against him. Plaintiff did not appeal that ruling. Instead, Plaintiff now seeks, by way of his denial-of-access claim in the district court, relief against Defendant Officers that is

5

unavailable on his underlying claim for excessive force.[1]

## III.

Both Defendant Officers and Defendant City tell us we can assume "for the purpose of this appeal" that "a cognizable right of access claim may arise from an alleged cover-up by police officers." Aplts' Op. Br. at 11–12. As a prelude to their principal argument, Defendant Officers "presume . . . that certain circumstances may exist under which a plaintiff may establish a cognizable right of access claim based upon a police officer's intentional, bad faith cover-up of excessive force." Id. at 17. But "even assuming the validity of a backwards looking right of access claim based on a cover-up," Defendant Officers argue "the facts in this case are insufficient to show that any [of them] personally participated in a cover-up to intentionally hide the identities of the officers who arrested [Plaintiff] for the purpose of denying him access to the courts." Id. at 36–37. At this point, Defendant City makes its

---

[1] Where a plaintiff prior to filing an underlying claim knows of facts suggesting an evidentiary cover-up by government officials, the underlying claim and the denial-of-access claim generally should be joined in the same action even if that requires bifurcated trials. See Harbury, 536 U.S. at 416. The district court in Plaintiff's first suit, however, ruled Plaintiff could not join his denial-of-access claim with his excessive force claim. The court dismissed Plaintiff's access claim as unripe. Lynch v. Barrett, 2010 WL 3938359, at *5–*6 (D. Colo. 2010). After the court granted Defendant Officers' Rule 50 motion on Plaintiff's excessive force claim, Plaintiff moved to amend his complaint to include his denial-of-access claim. The court denied the motion. Plaintiff did not appeal that denial, but filed his access claim anew in the district court. Notably, Defendant Officers have not asserted the affirmative defense of claim preclusion in this case and the viability of such defense is not before us.

6

pitch: "Because the record confirms that [Plaintiff] has failed to meet his burden of showing the undisputed facts of this case demonstrate a cognizable right of access claim [against Defendant Officers], his claim against [Defendant City] also fails as a matter of law." Id. at 36. Finally, Defendant Officers argue in the alternative that because "the Tenth Circuit has never expressly recognized a [constitutional] cause of action based upon an alleged cover-up," they are entitled to qualified immunity for lack of clearly established law informing them their alleged obstinacy violated Plaintiff's right to court access. Id. at 33.

## A.

We begin with Defendant Officers' appeal based on their claim to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable officer would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In contrast to a standard motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion based on a claim of qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009) (internal quotations omitted). Here, the district court concluded Plaintiff carried his

7

burden. The court held Plaintiff presented facts sufficient to warrant a finding that Defendant Officers violated his constitutional right to court access. The court also held Plaintiff had shown, based on those facts, that his right to court access was clearly established at the time of Defendant Officers' violation. That is according to the district court, a reasonable officer would have understood Defendant Officers violated Plaintiff's right to access by intentionally concealing the identity of the officer or officers responsible for subjecting him to excessive force.

That portion of the district court's order denying Defendant Officers qualified immunity constitutes a "final decision[]" within the meaning of 28 U.S.C. § 1291, and is appealable—at least in part. In Mitchell v. Forsyth, 472 U.S. 511 (1985), the Supreme Court held a district court order denying an official's claim to qualified immunity constituted a "collateral order," and thus a final decision under § 1291, where the issue appealed concerned, not which facts the parties might be able to prove at trial, but rather, whether certain facts "support a claim of violation of clearly established law." Id. at 528 n.9. Subsequently, in Johnson v. Jones, 515 U.S. 304 (1995), the Supreme Court held a court order denying officials' motion for summary judgment based on their claim to qualified immunity was not appealable where "[t]he order in question resolved a *fact*-related dispute about the pretrial record, namely, whether . . . the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." Id. at 307. Explaining "immunity appeals interfere less with the final judgment rule if they are limited to cases presenting neat

8

abstract issues of law," id. at 317 (internal brackets, ellipses, and quotations omitted), the Court reiterated that an "appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts." Id. at 313 (quoting Mitchell, 472 U.S. at 528).

In other words, "if a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." Lewis v. Tripp, 604 F.3d 1221, 1225 (10th Cir. 2010). Bound by those facts, we may consider only "the 'abstract' *legal* questions [1] whether those facts suffice to show a violation of law and [2] whether that law was clearly established at the time of the alleged violation." Id. If we answer both questions yes, we affirm the district court's denial of qualified immunity. If we answer either question no, we reverse. For any number of reasons outlined by the Supreme Court, we are permitted to exercise our sound discretion in deciding whether to bypass the first question and proceed directly to the second. Pearson, 555 U.S. 236–43.

1.

A prerequisite to the district court's decision that Plaintiff presented facts sufficient to warrant a finding Defendant Officers violated his constitutional right to court access was its determination that "intentional concealment of evidence by a police officer that interferes with an individual's ability to obtain redress for police

9

misconduct is unconstitutional." Lynch, 2012 WL 1890442, at *3; cf. Siegert v. Gilley, 500 U.S. 226, 232 (1991). As explained, Defendant Officers do not challenge that determination. Rather, Defendant Officers challenge the court's decision that the facts warrant a finding they violated Plaintiff's right to court access. Which facts? Defendant Officers say the facts in the record, a "majority" of which the district court ignored:

> To survive summary judgment, [Plaintiff] was required to present evidence sufficient to raise a genuine issue of material fact concerning each officer's personal participation in an intentional . . . cover-up to hide the identities of the officers who allegedly used excessive force against him. The district court found that Plaintiff presented such evidence as to [Defendant] [O]fficers . . .; however, *a review of the record reveals that the evidence* concerning [Defendant Officers] alleged involvement in a cover-up is . . . speculative . . . .
>
> * * *
>
> *[T]he record is devoid of any evidence* to suggest that from their various locations [Defendant Officer] Barrett, Morelock, or Kenfield would have been able to see what was happening regardless of darkness and the potential obstruction of their view . . . .

Aplts' Op. Br. at 18–20 (emphasis added).

The problem with Defendant Officers argument is that at this stage of the litigation we have no jurisdiction to resolve "*fact*-related disputes about the pretrial record, namely, whether . . . the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." Johnson, 515 U.S. 307. Yet this is precisely what Defendant Officers propose we resolve. The Supreme Court has made the point (as have we) time and again: "[D]eterminations of evidentiary sufficiency at

10

summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case."[2] Behrens v. Pelletier, 516 U.S. 299, 313 (1996). We choose to belabor this matter no further. Instead we now simply *assume* (1) a

---

[2] In Lewis, we pointed out two exceptions that may allow us to look behind a district court's order denying officials qualified immunity at the summary judgment stage. First, where the district court's order "fails to identify the particular charged conduct that it deemed adequately supported by the record," we may "review the entire record de novo to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make." Lewis, 604 F.3d at 1225; see also Johnson, 515 U.S. at 319 (noting that if a district court does not state the facts a jury could find, "a court of appeals may have to undertake a cumbersome review of the record to determine [those] facts"). Second, where the "'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,'" we may "assess the case based on our own de novo view of which facts a reasonable jury could accept as true." Lewis, 604 F.3d at 1225–26 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Whether a district court has stated facts tending to establish each element of a plaintiff's claim, *i.e.*, a violation of the law, should be readily discernable, or we should hope. A mere claim that the record "blatantly" contradicts the district court's factual recitation, however, may not be so easily resolved. Such claim alone does not require us to look beyond the facts found and inferences drawn by the district court. Rather, the court's findings must constitute "visible fiction." Scott, 550 U.S. at 380–81. Scott illustrates the point. In that case, a videotape capturing the events in question "quite clearly contradict[ed] the version of the story told by [plaintiff] and adopted by the Court of Appeals." Id. at 378. Only in their reply brief do Defendant Officers cite Lewis and argue we should look behind the district court's summary judgment order because that order "fails to identify the specific facts upon which a reasonable jury might rely to find that [Defendant] [O]fficers engaged in an intentional cover-up or conspiracy." Aplts' Reply Br. at 3. To be sure, the district court's order tells us only that Defendant Officers were at the scene of Plaintiff's arrest and were in a position to witness the use of excessive force against him, but cannot identify the responsible officer or officers. But whether this evidence is alone sufficient to establish a "cover-up", and thus a violation of Plaintiff's right to court access, or whether it is so lacking as to permit us to look behind the district court's order to ascertain those facts supporting Plaintiff's claim, is a question not properly before us because we do not consider arguments raised for the first time in a reply brief. See Iqbal v. Holder, 693 F.3d 1189, 1195 n.4 (10th Cir. 2012).

11

police cover-up designed to hinder pursuit of a legal claim may violate an individual's constitutional right to court access and (2) the facts set forth in the district court's order are sufficient to warrant a finding that Defendant Officers violated Plaintiff's right in this case. This allows us to broach the more manageable question of whether Plaintiff's right to court access was clearly established in the specific context of this case.

2.

The second prong of the qualified immunity analysis shields a government official from a claim of unconstitutional conduct where a reasonable official might not have understood that such conduct violated the Constitution. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds by Pearson 555 U.S. at 236. To overcome Defendant Officers' claim of qualified immunity, Plaintiff must show the scope of his right to court access was sufficiently clear such that a reasonable officer would have understood Defendant Officers' refusal to name those responsible for exercising excessive force against him was not merely ill-advised, but violated that right:

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed even the burdens of litigation.

12

It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (internal quotations omitted). If a reasonable officer would have had difficulty determining how the law concerning the right to court access applied to the facts of this case, Defendant Officers are entitled to qualified immunity. All this is not to say that qualified immunity shields official action unless controlling precedent squarely holds the challenged action unlawful; rather "in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations omitted).

While the precise source of the constitutional right to court access remains ambiguous, the existence of such right, generally speaking, is quite clear. Over two decades ago we observed:

The right of access to courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution. This right is one of the privileges and immunities accorded citizens under article 4 of the Constitution and the Fourteenth Amendment. It is also one aspect of the First Amendment right to petition the government for redress of grievances. Finally, the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights.

Smith v. Maschner, 899 F.2d 940 at 947 (10th Cir. 1990) (internal citations omitted). But simply to say the Constitution recognizes a right to court access casts too high a level of generality over our inquiry. To show *his* alleged right to court access was clearly established in the proper sense, Plaintiff should identify "cases of controlling

13

authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority" clearly establishing the scope of the right encompasses the facts presented, "such that a reasonable officer could not have believed that his actions were [consistent with that right]." Wilson v. Layne, 526 U.S. 603, 617 (1999); see also Green, 574 F.3d at 1300.

In 2002, the Supreme Court in Harbury "was careful not to endorse the validity of . . . backwards looking [right to access] claims." Jennings, 383 F.3d at 1209 (citing Harbury, 536 U.S. at 414 n.9). Henceforth, the Supreme Court has never defined the right of court access to include a backwards looking claim based on a "conspiracy of silence" aimed at interfering with an individual's ability to procure evidence of official misconduct. Nor have we ever endorsed such constitutional claim. In McKay v. Hammock, 730 F.2d 1367, 1375 (10th Cir. 1984), we stated that "conduct under color of law which interferes with [the] right [to court access] gives rise to a cause of action under § 1983." In that case, plaintiff alleged police officers "threatened to see that his probation was revoked if he *filed* a civil rights action based on [unlawful] arrests." Id. (emphasis added); see Foster v. City of Lake Jackson, 28 F.3d 425, 429–31 (5th Cir. 1994) (characterizing the right of access as encompassing only the right to file suit and not the right to proceed free of discovery abuses or even an evidentiary cover-up). A decade later in Wilson v. Meeks, 52 F.3d 1547 (10th Cir. 1995), we squarely rejected a right to access claim based on, among other things, allegations that a police official "ordered a 'code of silence' concerning

14

the Wilson shooting:"

> Insofar as the "code of silence" refers to [the official's] directive to police officers not to discuss the case, it is not a constitutional violation. There is no constitutional duty for a police department to disclose details concerning a police shooting to the public. *Naturally, the duty to disclose such facts may arise in response to discovery or other legal process. In such case, however, the duty is merely legal rather than constitutional.*

Id. at 1557 (emphasis added).

This brings us to our 2004 decision in Jennings. In that case, plaintiff claimed police officers violated her right to court access by intentionally undermining her ability to bring a private tort action against her alleged sexual assailants, members of the Oklahoma State football team. We began our analysis of plaintiff's claim by observing that "[t]his Circuit has not recognized a constitutional cause of action based on denial of access to courts under these circumstances." Jennings, 383 F.3d at 1207. We then embarked on a discussion of Wilson:

> On appeal from the district court's denial of summary judgment for the defendants based on qualified immunity, [*Wilson*] noted that while other circuits have recognized a cause of action for police cover-up, the Tenth Circuit had not endorsed this cause of action. Further, *Wilson* explained that even the Fifth Circuit, which first articulated the access-to-courts claim, had since limited these claims to cases alleging interference with the filing of a complaint [as opposed to interference with discovery] *Wilson* thus *strongly suggests that a police cover-up does not give rise to a constitutional claim of denial of access to courts in this Circuit.*[3]

---

[3] In Jennings we eventually assumed Wilson did not foreclose plaintiff's right to access claim. Rather, Harbury foreclosed it because plaintiff was not denied court access insofar as she had sought and obtained a like measure of damages in a prior

(continued...)

15

Id. at 1208 (emphasis added) (internal citations, brackets, and quotations omitted).

The foregoing discussion makes apparent the point. At least in the Tenth Circuit, the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access was not clearly established at the time of the alleged violation. A reasonable officer might not have understood what Defendant Officers did (or refused to do) violated that right. "[I]n the light of pre-existing law," the unconstitutionality of Defendant Officers' misfeasance simply was not clear. Hope, 536 U.S. at 739. In other words, whether the scope of the right to access extended as far as Plaintiff claims was "far from obvious." Pearson, 555 U.S. at 237. What is obvious is that such right as defined by Plaintiff was not clearly established. Assuming the truth of Plaintiff's version of events, Defendant Officers' conduct is inexcusable. "But that we are 'morally outraged' . . . by the alleged conduct . . . does not mean necessarily that the offic[ers] should have realized that it violated a constitutional right of access." Foster, 28 F.3d at 430. Because Defendant Officers are entitled to qualified immunity on Plaintiff's right to access claim based on the absence of clearly established law recognizing such right, we reverse the district court's decision denying them the same.

---

[3](...continued)
suit against four football players and the university. Jennings 383 F.3d at 1208–09; see also Harbury 536 U.S. at 415.

B.

We now turn to Defendant City's appeal from the denial of their standard motion for summary judgment. The district court's denial of that motion, a motion which raised a "mere defense to liability" based on the insufficiency of the evidence, does not constitute a final decision under § 1291 and is not appealable as such. Swint, 514 U.S. at 43. Unlike Defendant Officers, Defendant City is unable to claim immunity from suit and "cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision." Moore v. City of Wynnewood, 57 F.3d 924, 929 (10th Cir. 1995). Defendant City therefore asks us to exercise pendent party appellate jurisdiction, claiming its appeal is inextricably intertwined with Defendant Officers' appeal.

The Supreme Court has not "universally required courts of appeals to confine review to the precise decision independently subject to appeal." Swint, 514 U.S. at 50. Yet in Swint, the Court evinced concern that a "rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets." Id. at 49–50. The parties there, however, did not assert the district court's decision denying the county commission summary judgment was "inextricably intertwined with that court's decision to deny the individual defendants[] qualified immunity . . . or that review of the former decision was necessary to ensure meaningful review of the latter." Id. at 51. So the Court did not address "whether or when it may be proper for a court of appeals, with

17

jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable." Id. at 50–51.

Subsequently in Moore, a § 1983 case raising constitutional claims against a police chief and the city that employed him, we seized upon Swint to reason:

> As we read *Swint*, a pendant appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well.  Here, we conclude that the two appeals are coterminous [1] because [plaintiff's] federal . . . claim[] against the City . . . [is] premised on his claim that [the police chief] violated his First Amendment rights *and* [2] because we hold that no such First Amendment violation occurred.  As such, the issues presented in the City's appeal are no broader than those in [the police chief's] permissible collateral appeal [from the denial of qualified immunity], and our disposition of [the police chief's] appeal fully disposes of [plaintiff's] claims against the City.

Moore, 57 F.3d at 930.

Moore tells us that *if* we had held in this case that Defendant Officers' conduct did not violate Plaintiff's constitutional right to court access, that holding would have resolved any issue presented by Defendant City's appeal.  This is because Plaintiff's claim against the City is premised on his claim Defendant Officers violated his right to court access.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that if a police officer inflicted no constitutional injury on the suspect, "it is inconceivable" the police commissioners could be liable to the suspect); Camuglia v City of Albuquerque, 448 F.3d 1214, 1223 (10th Cir. 2006)

18

(recognizing a municipality may not be held liable for a policy or practice in the absence of an underlying constitutional violation by an individual official). In that case, nothing would be gained by declining to dispose of the City's appeal on the merits because "appellate resolution of the collateral appeal *necessarily* [would] resolve[] the pendent claim as well." Moore, 57 F.3d at 930.

But because we *assumed* Defendant Officers violated Plaintiff's right to court access and *held* they were entitled to qualified immunity based on the lack of clearly established law, Defendant City's appeal in not "inextricably intertwined" with Defendant Officer's appeal. Nor need we resolve the City's appeal to ensure meaningful review of the Officers' appeal. See id. ("[T]he city's appeal might present different issues than [the police chief's] appeal if we concluded that [he] violated [plaintiff's] [constitutional] rights, but . . . was protected by qualified immunity because those rights were not clearly established.") "[T]here is nothing anomalous about allowing . . . a suit [against the city] to proceed when immunity [based on a lack of clearly established law] shields the individual defendants." Watson v. City of Kansas City, 857 F.2d 690, 697 (10th Cir. 1988). Nothing at this point prevents Plaintiff's claim against Defendant City from proceeding. Accordingly, we dismiss Defendant City's appeal for want of subject matter jurisdiction.

REVERSED IN PART; DISMISSED IN PART; and REMANDED for further proceedings consistent with this opinion.

19