FILED
United States Court of Appeals
Tenth Circuit

November 14, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JAMES DURKEE,

     Plaintiff-Appellee,

v.

SHERIFF JOHN MINOR, in his
individual capacities; SERGEANT
RON HOCHMUTH, in his individual
capacity,

     Defendants-Appellants.

No. 16-1003

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 14-CV-745-WYD-MJW)

---

Melanie B. Lewis (Josh A. Marks with her on the brief), Berg, Hill, Greenleaf,
Ruscitti LLP, Boulder, Colorado, for Defendants-Appellants.

Andrew McNulty (David A. Lane with him on the brief), Killmer, Lane & Newman,
LLP, Denver, Colorado, for Plaintiff-Appellee.

---

Before **LUCERO**, **BALDOCK**, and **BACHRACH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

     Defendant John Minor is the Sheriff of Summit County, Colorado.  Defendant

Ron Hochmuth is a sergeant with the Summit County Sheriff's Department.  Plaintiff

James Durkee sued them both in their individual capacities under 42 U.S.C. § 1983. Plaintiff asserts Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when he was attacked by Ricky Michael Ray Ramos, a fellow inmate, at the Summit County Detention Center. In a written order, the district court denied Defendants qualified immunity in the context of their motion for summary judgment and they appealed. Durkee v. Minor, 2015 WL 8145257 (D. Colo. 2015) (unpublished). To the extent we may exercise jurisdiction over the district court's decision, we do so under 28 U.S.C. § 1291. See Lynch v. Barrett, 703 F.3d 1153, 1158–60 (10th Cir. 2013).

Both the Supreme Court and this Court have spoken repeatedly on the defense of qualified immunity and our jurisdiction to review the denial of the same prior to final judgment. See, e.g., Johnson v. Jones, 515 U.S. 304 (1995); Lewis v. Tripp, 604 F.3d 1221 (10th Cir. 2010). We will not reinvent the wheel here. For now, suffice to say Defendants' claim to qualified immunity imposes the burden on Plaintiff to show Defendants violated a constitutional right that was clearly established under the facts of this case at the time of the violation. Lynch, 703 F.3d at 1159. In deciding whether Plaintiff has met his burden, we generally are not empowered to consider which facts the parties might be able to prove at trial. Id. at 1160 & n.2. Rather, we may ask only whether the facts the district court found support Plaintiff's claim that Defendants violated clearly established law. Id. at 1159. In other words, if the district court concluded a reasonable jury could find

2

"certain specified facts" in favor of Plaintiff, we "usually must take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." Id. (quoting Lewis, 604 F.3d at 1225). Applying the appropriate legal standards, we affirm as to Defendant Hochmuth and reverse as to Defendant Minor.

I.

The facts the district court recited are sufficient to justify the denial of qualified immunity to Defendant Hochmuth. The district court's factual statement, by which we are bound in the current context, reads as follows:

> Inmate Ricky Michael Ray Ramos ("Ramos") had a history of aggressive behavior at the jail, and had been charged with several violations of jail rules on several occasions for threatening behavior towards jail staff, including a threat to stab a deputy in the neck, and toward other inmates, including the Plaintiff. Ramos had threatened Plaintiff shortly after Plaintiff's arrival at the jail, and Plaintiff requested that he be reassigned to another housing pod away from Ramos. After an argument between Ramos and Plaintiff, Plaintiff again expressed concern about Ramos' aggression toward him. A deputy issued an incident report stating that "[f]or future reference [Plaintiff] and Ramos cannot attend any programs together or ever be in the hallways or [booking] passing." Jail staff, including Defendant Hochmuth, acknowledged and initialed receipt of the notice.
>
> On December 28, 2012, Ramos was being escorted back from a court proceeding by Defendant Hochmuth, and was unshackled in the booking area of the jail, which is adjacent to the professional visitation room. At that time, Plaintiff was in the visitation room, meeting with a mental health counselor. There are windows in the visitation room and those meeting inside are visible to those in the booking area. Plaintiff states that he saw both Ramos and Defendant Hochmuth in the booking area through the visitation room window. Defendant Hochmuth contends he did not see the Plaintiff in the visitation room. Defendant Hochmuth

3

proceeded to unshackle Ramos in the booking area, and instructed him to return to his housing pod. After taking one or two steps toward the housing pod door, Ramos suddenly turned around and ran into the visitation room through its unlocked door and assaulted Plaintiff. Although the altercation was brief, Plaintiff suffered a facial fracture from the assault.

Durkee, 2015 WL 8145257, at *1 (brackets in original).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court held a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. To establish deliberate indifference on the part of Defendant Hochmuth, Plaintiff must prove that Hochmuth *knew of and disregarded* a substantial risk to Plaintiff.[1] See id. at 837–38. In other words, Hochmuth must have been aware of facts from which he could draw the inference that a substantial risk of serious harm to Plaintiff existed, and he must also have drawn the inference. Id. at 837. Defendant Hochmuth does not dispute that he knew Ramos posed a substantial risk of serious harm to Plaintiff "generally." Instead, Hochmuth tells us he never appreciated the risk to Plaintiff that Ramos posed while in the booking area because he did not see Plaintiff in the visitation room before he unshackled Ramos.

---

[1] Plaintiff's repeated reference in his brief to an erroneous legal standard that would hold Defendant Hochmuth liable for an Eighth Amendment violation if he *should have known* Plaintiff was in the visitation room is unacceptable. To establish deliberate indifference, the law requires actual knowledge. Farmer plainly tells us so: "We . . . hold that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official *knows of and disregards* an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837 (emphasis added).

Defendant Hochmuth insists that without specific knowledge of facts from which he could infer Plaintiff was at imminent risk of attack while in the visitation room, he could not have been deliberately indifferent to Plaintiff's safety.

Defendant Hochmuth is quite correct in suggesting that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for condemnation, cannot . . . be condemned as the infliction of punishment." Id. at 838. The Supreme Court has pointed out, however, that if the risk is obvious such that a reasonable man would realize it, a jury might infer that a defendant did in fact realize it. "[B]ut the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of." Id. at 842 (internal quotations omitted). This means that where the facts as found by the district court show—as they do here—that a substantial risk of an inmate attack against Plaintiff was well-documented and expressly noted by prison officials prior to the attack in question, and those facts further show—as they do here—that Defendant Hochmuth was informed of and acknowledged the risk and was accompanying Ramos in an area where Ramos and Plaintiff were visible to each other, such facts are sufficient to permit a jury to find Hochmuth had actual knowledge of the risk and disregarded it. Id. at 842–43.

As the district court recited the facts, the success of Defendant Hochmuth's defense of this suit may very well turn on whether a jury finds credible his testimony that he never saw Plaintiff in the visitation room. Of course, no one other than

5

Hochmuth may testify to what he actually saw while preparing to unshackle Ramos in the booking area. But others may testify to the surrounding circumstances and what they witnessed. Obviously, Ramos saw Plaintiff through the large rectangular window providing visual access from the booking area into the visitation room. Plaintiff says he saw Ramos in the booking area through the same window. Based both on the district court's factual findings and what Farmer teaches us, a jury could reject Defendant Hochmuth's testimony and infer that he too saw Plaintiff in the visitation room before unshackling Ramos. "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. at 842. The question whether Defendant Hochmuth was aware of facts from which he drew the inference that a risk of harm to Plaintiff existed while in the visitation room is for the factfinder.[2]

## II.

While the district court's factual findings are sufficient at this stage to overcome Defendant Hochmuth's qualified immunity defense, we cannot say the

---

[2] To complete our qualified immunity analysis as to Defendant Hochmuth, we easily conclude, based on the district court's findings and the state of the law during the relevant time period, that a reasonable officer cognizant of Plaintiff's presence in the unsecured visitation room would have understood that unshackling Ramos in the booking area posed a substantial risk of harm to Plaintiff in violation of the Eighth Amendment. See Lynch, 703 F.3d at 1160–61. Therefore, the law on which Plaintiff bases his claim against Hochmuth was clearly established at the time of the subject incident.

same for its findings as they bear upon Defendant Minor's defense. Those findings are as follows: (1) Defendant Minor was responsible for managing the staff at the detention center and for implementing the policies and procedures under which the center operated; (2) the policy of the detention center was to unshackle inmates in the booking area adjacent to the unlocked professional visitation room once they returned from court; and (3) Defendant Minor undertook a post-assault review and determined further inquiry into the conduct of Defendant Hochmuth was unwarranted. Based on these facts, the court concluded: "A fact finder could impose liability against Defendant Minor in his individual capacity by virtue of his control or direction of the jail staff, or by his failure to properly supervise staff members, including Defendant Hochmuth. Accordingly, summary judgment on this issue is precluded." Durkee, 2015 WL 8145257, at *4.

The district court was wrong to conclude—based on its limited findings—that a jury could hold Defendant Minor liable to Plaintiff in his individual capacity. Plaintiff's claim against Defendant Minor in his individual capacity amounts to a claim of direct supervisory liability.[3] To establish such liability, Plaintiff must show Defendant Minor's "*direct personal responsibility*" for the claimed deprivation of his Eighth Amendment right. Porro v. Barnes, 624 F.3d 1322, 1327 (10th Cir. 2010)

---

[3] While Plaintiff also sues Defendant Minor in his official capacity, we have no jurisdiction over the district court's decision to deny him summary judgment in such capacity. See Cox v. Glanz, 800 F.3d 1231, 1255 (10th Cir. 2015).

7

(emphasis in original) (quoting <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1227 (10th Cir. 2006)). "Simply put, there's no special rule of [individual capacity] liability for supervisors. The test for them is the same as the test for everyone else." <u>Id.</u> at 1328. Accordingly, Plaintiff must prove Defendant Minor caused his injury with a state of mind amounting to deliberate indifference for Plaintiff's safety. <u>See</u> <u>Dodds v. Richardson</u>, 614 F.3d 1185, 1195 (10th Cir. 2010) (recognizing the elements of individual supervisory liability as (1) personal involvement, (2) causation, and (3) a culpable state of mind equal to that required to establish the underlying constitutional violation).

In <u>Dodds</u>, we decided a sheriff could be held individually liable for his deliberately indifferent maintenance of a policy that prevented arrestees from posting preset bail for no legitimate reason, in violation of the Fourteenth Amendment's liberty guarantee. <u>Id.</u> at 1206. Plaintiff tells us the parallels of his case to <u>Dodds</u> are clear. To us those parallels are clear as mud. <u>Dodds</u> involved a policy or procedure that was constitutionally infirm in the overwhelming majority of its applications, if not on its face. <u>See also</u> <u>Wilson v. Montano</u>, 715 F.3d 847, 857–58 (10th Cir. 2013) (relying on <u>Dodds</u> to hold a warden and sheriff could be held individually liable for maintaining a policy permitting prolonged warrantless detentions in violation of the Fourth Amendment). The policy Plaintiff challenges here presents us with no such dilemma. The detention center's policy of unshackling inmates in the booking area next to the visitation room does not appear problematic on its face; nor has it proven

8

problematic in its application—at least on the record before us—save the present isolated incident. See Lynch, 703 F.3d at 1160 n.2 (where a district court's findings are insufficient to withstand a qualified immunity defense, the court of appeals may look behind the district court's order to ascertain whether the record supports plaintiff's claim).

Apart from a supervisor's promulgation of the sort of policy at issue in Dodds, some of our sister circuits have held a supervisor may cause a constitutional violation when he has actual knowledge of subordinates' past constitutional violations but does nothing to stop future occurrences. Dodds, 614 F.3d at 1212 (Tymkovich, J., concurring) (citing cases). Nothing in the present record suggests, however, that the policy in question here led to any constitutional violations prior to Ramos's assault on Plaintiff. That Defendant Minor undertook a post-assault review and determined further inquiry into the conduct of Defendant Hochmuth was unwarranted does not assist Plaintiff. As we explained in Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009), "basic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." (emphasis in original).

We suppose cases of supervisory liability under § 1983 are not necessarily limited to those two factual scenarios we have just outlined. But whether Plaintiff's theory of causation is based on an improper or inadequate policy or something else such as failure to train or supervise, the fact remains that he must still present record

9

evidence sufficient to permit a jury to find that *Defendant Minor caused his injury while deliberately indifferent* to his safety. This Plaintiff has not done, which perhaps accounts for the district court's inadequate findings. That Plaintiff misunderstands his burden is well illustrated by his argument to both the district court and us that Defendant Minor's "inadequate training and supervision of Hochmuth and others at the jail *led to Hochmuth's deliberate indifference* to [Plaintiff's] safety." Apellee's Br. at 35 (emphasis added); see also Durkee, 2015 WL 8145257, at *3. Plaintiff's argument in support of his individual liability claim against Defendant Minor amounts to little more than Minor should be held liable because he was in charge of the detention center. This simply is not enough to hold Defendant Minor liable in his individual capacity.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.[4]

---

[4] Defendants' outstanding motion to file their Appendix Vol. II under seal is GRANTED.